**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**RONALD FREEMAN,**

**Plaintiff,**

**v.**

**Case No. 04-CV-0506-CVE-SAJ**

**SIKORSKY AIRCRAFT CORPORATION, UNITED TECHNOLOGIES CORPORATION, and ERIN BOLDUC,**

**Defendants.**

**OPINION AND ORDER**

Now before the Court is Defendants' Motion for Summary Judgment (Dkt. # 54). Plaintiff brought this action against Defendants, Sikorsky Aircraft Corporation ("Sikorsky") and United Technologies Corporation ("United")[1] for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, et seq. Plaintiff also alleges causes of action for intentional interference with prospective economic advantage and intentional infliction of emotional distress.

**I.**

Plaintiff was offered employment with defendants[2] as a base manager on September 29, 1998. Dkt. # 55, Ex. A, Offer Letter. He accepted the job offer. In September 1999, he was assigned to be the Base Manager of defendants' site in Manaus, Brazil. While working in Manaus, plaintiff made several trips to the United States. Id., Ex. I, Plaintiff's List of Time in the United

---

1 Plaintiff also sued Erin Bolduc ("Bolduc"), who was dismissed as a party defendant for lack of personal jurisdiction. Dkt. # 49.

2 For the purpose of their motion for summary judgment, defendants do not contest that they were plaintiff's employer.

States. His time in the U.S. averaged to less than one month per year from 2000 to 2003. On March 17, 2003, plaintiff confirmed his employment status as a "US Expatriate[] on international assignment in Manaus, Brazil." Id., Ex. E, International Assignment Letter. According to the international assignment letter, the effective date of plaintiff's international status was September 1999.

On January 4, 2004, plaintiff left Brazil and flew to Tulsa, Oklahoma. According to defendants, plaintiff abandoned his position without notice to his employer. Plaintiff testified that he did not "abandon" his job. Dkt. # 61, Ex. 1, Affidavit of Ronald Freeman. Yet, plaintiff does not dispute that he failed to give defendants notice of his move to the United States prior to leaving Brazil. In Tulsa, plaintiff saw a psychiatrist, Patricia J. Allison, M.D., who diagnosed him as suffering from major depressive disorder and panic disorder without agoraphobia. Id., Ex. 2, Affidavit of Dr. Allison. Dr. Allison contacted defendants on January 9, 2004 to request medical leave for plaintiff. Id. No defendant representative informed plaintiff or Dr. Allison that plaintiff was not eligible for leave under the FMLA. Id., Ex. 1, Affidavit of Ronald Freeman. On January 30, 2004, plaintiff's payroll status was changed to "domestic," as he was living in the United States.

While on leave, plaintiff received a letter dated January 26, 2004 from Ken Thomson, Manager of Services Operation for the Maintenance Services Division of Sikorsky, informing him that he had ten days to reconcile certain company funds and property he had outstanding, including open and past due electric bills, contractor rent payments, a company van and the van driver's salary, a Brazilian lawyer's monthly fees, an open balance in the petty cash fund, an advance of $5000, a returned personal check for which the company was being held liable, transfer of title on the company van, the return of a company computer, and the lease on his Brazilian apartment. Dkt. #

55, Ex. O, Reconciliation of Company Funds Letter. The missing funds and property exceeded $33,000. Id. The letter stated that "[s]hould you be unable to reconcile these monies and take the requested actions . . . , you will be subject to disciplinary action up to and including termination." Id. On February 13, 2004, Bolduc, Human Resources Client Manager for Sikorsky, executed and mailed a letter to plaintiff advising him that his employment was terminated pursuant to the information contained in the January 26, 2004 letter. Dkt. # 55, Ex. Y, Termination Letter.

According to Dr. Allison, she asked Bolduc to have all communication with plaintiff channeled through Dr. Allison, and Bolduc agreed. Dkt. # 61, Ex. 2, Affidavit of Dr. Allison. Bolduc denies that she made such a promise. Dr. Allison testified that Bolduc's direct contact with plaintiff "had an adverse impact on him." Dkt. # 61, Ex. 2, Affidavit of Dr. Allison.

Plaintiff asserts that, although several demands regarding the reconciliation of money and property were made prior to his termination, he agreed to comply with every one of them and that he was unaware that his job was in jeopardy. He contends that the stated reasons for his termination were merely a pretext and that he was really fired in retaliation for having taken FMLA leave. Plaintiff also argues that communications with defendants and his termination caused his severe emotional distress and that defendants interfered with his economic opportunity.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. "Unsupported conclusory allegations thus do not create a genuine issue of fact." L&M Enterprises, Inc. v. BEI Sensors & Systems Co., 231 F.3d 1284, 1287 (10th Cir.2000). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

Plaintiff alleges that defendants fired him in violation of the FMLA, which "entitles eligible employees of covered employers to take up to 12 weeks of unpaid, job-protected leave each year because of, among other things, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Harbert v. Healthcare Servs. Group, Inc., 391 F.3d 1140, 1147 (10th Cir. 2004) (quoting 29 U.S.C. § 2612(a)(1)). Employees who are

"employed in any country other than the United States or Territory or possession of the United States" are not "eligible employees" for the purposes of the FMLA. 29 C.F.R. § 825.800. Plaintiff was employed in Brazil from September 1999 to January 2004. He was an extra-territorial employee, based in Manaus, until his status changed to domestic on January 30, 2004. He commenced leave earlier that month when he was still classified as an international employee. Plaintiff's argument that his "worksite" was in the United States is without support. See Harbert, 391 F.3d at 1147 (holding that plaintiff's "worksite" was in Brush, Colorado where she worked as the housekeeper supervisor, rather than in Golden, Colorado where she had occasional business at defendant's headquarters). As an ineligible employee, plaintiff has no action arising under the FMLA.

The Court notes that plaintiff is also ineligible for leave under the FMLA based on the size of his worksite. Under the FMLA, an "eligible employee" does not include "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2). "[T]he congressional purpose underlying the 50/75 provision was to remove the burden of providing FMLA leave from employers who do not have an abundant supply of temporary replacements in close geographic proximity to the employee requesting leave." Harbert, 391 F.3d at 1149. Plaintiff cannot circumvent this limitation on the scope of the FMLA by abandoning his assigned post in Manaus, returning to the United States without notice to his employer, and then requesting leave once in Oklahoma. Allowing such a loophole in the FMLA would undermine congressional intent. At the time that plaintiff took leave, his worksite was Manaus.

Plaintiff contends that defendants employed more than 50 individuals within a 75 mile radius of Manaus but provides only his own conclusory affidavit for support. The Court notes that conclusory statements are not sufficient to survive summary judgment. Plaintiff testified that there were never more than twenty-three people working for Sikorsky in the vicinity of Manaus. Dkt. # 55, Ex. L, Deposition of Ronald Freeman, at 27. The number of people employed is gauged by the number of employees on payroll. 29 C.F.R. § 825.111(c). The summary judgment record contains no documentation that Sikorsky and United employed over 50 individuals within a 75 mile radius of Manaus. Accordingly, plaintiff was not an "eligible employee" under the FMLA when he took leave in early January 2004, and he has no claim under the FMLA.

In the alternative, plaintiff argues that he is entitled to recover damages under the doctrine of equitable estoppel. See Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706 (2d Cir. 2001). However, "[w]hether equitable estoppel applies in a given case is ultimately a question of fact." Id. at 725. Further, the Tenth Circuit Court of Appeals "has not yet determined whether equitable estoppel applies in a FMLA action." Banks v. Armed Forces Bank, 2005 WL 699295 (10th Cir. March 28, 2005).[3] In Kosakow, the Second Circuit Court of Appeals stated that "*under the right circumstances*, equitable estoppel *may* be available to a plaintiff in Kosakow's position." 274 F.3d at 723 (emphasis added). The doctrine of equitable estoppel requires plaintiff to show that: defendants made a misrepresentation with reason to believe that plaintiff would rely on it; plaintiff relied on such misrepresentation; and plaintiff relied to his detriment. Id. at 725. Plaintiff's situation is distinguishable from the "right circumstances" which triggered estoppel in Kosakow.

---

[3] The Court recognizes that citation of an unpublished decision is disfavored. 10th Cir. R. 36.3. However, this unpublished decision has persuasive value on a material issue not addressed in a published opinion and it assists the Court in its disposition of this issue.

In Kosakow, plaintiff's manager led her to believe that she was entitled to medical leave under the FMLA. Relying on her manager's silence regarding her application for FMLA leave, Kosakow scheduled a non-emergency surgery. In fact, Kosakow was ineligible for FMLA leave due to having worked fewer than 1250 hours in the 12 months preceding leave. Id. at 715. Kosakow was terminated while on leave, and her employer defended its actions by stating that she was not eligible for FMLA leave. Id. The FMLA specifically requires employers to advise an employee if they do not have the requisite 1250 hours. 29 C.F.R. § 825.110(d). In Kosakow, the employer failed to notify Kosakow that she was not yet an "eligible employee," and she relied on her manager's assurances to her detriment. 274 F.3d at 715. The Second Circuit found that Kosakow's employer was estopped from raising an eligibility defense due to its failure to advise Kosakow that she did not have the necessary hours. Id. at 727. In contrast, there is no specific requirement to advise an employee that he or she is ineligible as an extra-territorial employee or because there are fewer than 50 employees near his or her worksite.

In addition, plaintiff does not establish that he relied on a misrepresentation when he departed Brazil on January 4, 2004. According to plaintiff, he would have used sick days and vacation days to take time away from work to deal with his depression, had he been informed that he was not entitled to FMLA leave. However, plaintiff effectively commenced leave on January 4, 2004 without notice to defendants and prior to his request for leave on January 9, 2004. Plaintiff took action without relying on a representation by defendant. In addition, defendants paid plaintiff between January 4, 2004 and February 13, 2004. Defendants are not estopped from raising an eligibility defense. Because plaintiff cannot show that he was an "eligible employee" under the FMLA, his first claim must fail.

**IV.**

In plaintiff's second claim, he alleges "tortious interference with economic opportunity." Dkt. # 1. It is not clear whether plaintiff is claiming tortious interference with a contractual relationship or interference with a prospective economic advantage.[4] The two are not synonymous. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 150 n.96 (Okla. 1998); Brock v. Thompson, 948 P.2d 279, 293 n.58. (Okla. 1997); Overbeck v. Quaker Life Ins. Co., 757 P.2d 846, 847-48 (Okla. Ct. App. 1984) ("Although both torts do have similarities, the underlying theories of liability differ. Interference with a prospective economic advantage usually involves interference with some type of reasonable expectation of profit, whereas interference with a contractual relationship results in loss of a property right.").

To recover in an action for tortious interference with contract or business relations a plaintiff must show that: (1) "he or she had a business or contractual right that was interfered with"; (2) "the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable"; and (3) "damage was proximately sustained as a result of the interference." Daniels v. Union Baptist Ass'n, 55 P.3d 1012, 1015 (Okla. 2001) (quoting Mac Adjustment, Inc. v. Property Loss Research Bureau, 595 P.2d 427, 428 (Okla. 1979)). A claim for tortious interference with a contract or business relationship is properly pled only if it alleges that a third party induced one of the parties to the contract to breach its agreement. Gabler v. Holder and Smith, Inc., 11 P.3d 1269, 1278 (Okla. Civ. App. 2000). Plaintiff cannot recover for tortious interference with contract or business relations because plaintiff had no business or contractual right with a third party with which defendants could interfere, and a party to a contract cannot tortiously interfere with its own contract

---

[4] Plaintiff fails to respond to defendants' motion for summary judgment regarding this claim.

or business relationship. Navistart Intern. Trans. Corp. v. Vernon Klein Truck & Equip., 919 P.2d 443, 446-47 (Okla. Ct. App. 1994) (citing Schonwald et al. v. Ragains, 122 P. 203, 209 (Okla. 1912)). Plaintiff has identified no contractual right with which defendants interfered. Thus, to the extent the second claim is that defendants tortiously interfered with a contractual relationship with plaintiff, defendants are entitled to summary judgment.

By comparison, "[t]he essential elements of a claim for intentional interference with prospective economic advantage are 'the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.'" Boyle Servs., Inc. v. Dewberry Design Group, Inc., 24 P.3d 878, 880 (Okla. Civ. App. 2001) (citations omitted). If plaintiff is claiming that defendants interfered with plaintiff's prospective economic advantage by terminating his employment, the undisputed facts mandate summary judgment for defendants. Plaintiff was an at-will employee and, therefore, had no right to or expectancy of continued future employment. See Gaylord, 958 P.2d at 150 n.96. Accordingly, plaintiff has not raised a genuine issue of material fact as to an essential element of his interference claim. Defendants are entitled to summary judgment on plaintiff's second claim.

**V.**

Plaintiff's third claim alleges that he is entitled to relief under the common law torts of negligent and/or intentional infliction of emotional distress. Oklahoma law does not recognize an independent tort of negligent infliction of emotional distress. "A Plaintiff therefore cannot proceed on a negligent infliction of emotional distress theory of liability separate from negligence, and the

traditional elements of duty, breach of duty, causation, and damages apply." Wilson v. Muckala, 303 F.3d 1207, 1213 (10th Cir. 2002) (citations omitted). Since plaintiff did not allege negligence, and has not pled or raised a genuine issue of material fact as to the necessary element of physical injury, defendants are entitled to summary judgment on plaintiff's claim of negligent infliction of emotional distress. Id.

Oklahoma does recognize as an independent tort the intentional infliction of emotional distress, also known as the tort of outrage. Gaylord, 958 P.2d at 149. In order to prevail on this claim, plaintiff must show that: defendants acted intentionally or recklessly; defendants' conduct was extreme and outrageous; defendants' conduct caused plaintiff emotional distress; and that the resulting emotional distress was severe. Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002). Recovery under this theory is governed by very narrow standards, however, and "it is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the [Restatement (Second) of Torts § 46] standards." Gaylord, 958 P.2d at 149. Plaintiff must show that defendants engaged in conduct that was not only unreasonable but also was "beyond all possible bounds of decency in the setting in which it occurred" and was such that it can be "regarded as utterly intolerable in a civilized community." Id. at 149 n.92 (citation omitted). "[C]onduct is not extreme and outrageous if it amounts to no more than mere insults, indignities, or petty oppressions." Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1388 (10th Cir. 1991).

Oklahoma courts have examined a variety of conduct claimed to be outrageous in the employment context, setting a very high standard for actionable conduct. See Eddy v. Brown, 715 P.2d 74 (Okla. 1986) (supervisor and foreman ridiculing plaintiff in the workplace not actionable);

Mirzaie v. Smith Cogeneration, Inc., 962 P.2d 678 (Okla. Civ. App. 1998) (employer calling plaintiff in the middle of the night and browbeating him for hours, requiring him to do unnecessary work, and making derogatory sexual comments about plaintiff's fiancee not actionable); Anderson v. Oklahoma Temporary Services, Inc., 925 P.2d 574 (Okla. Civ. App. 1996) (six events over a two-year period, including supervisor making lewd remarks about plaintiff and embarrassing her by discussing her faults with co-workers, not actionable). Similarly, the Tenth Circuit, interpreting Oklahoma law, has reinforced the high burden to be met for liability for intentional infliction of emotional distress. See Daemi, 931 F.2d at 1388 (affirming district court decision that employer who called employee derogatory names based on national origin, compelled him to terminate or otherwise eliminate his Iranian subordinates because of their national origin, impugned his integrity by accusing him of criminal acts and requiring him to take a polygraph, and ridiculed him publicly at seminars not actionable in tort for intentional infliction of emotional distress).

Plaintiff alleges that defendants' representatives contacted him directly to ask that he reconcile unaccounted for funds and terminated him for failure to reconcile such funds. It was reasonable for the employer to contact the employee once responsible for company property found to be missing. Dr. Allison testified that plaintiff was harmed by the direct contact due to his vulnerable state. However, plaintiff initiated much of the communication between the parties in January 2004, and written communication from defendants to plaintiff in 2004 had a professional tone. The Court finds that, even taken in the light most favorable to the plaintiff, the summary judgment record does not contain behavior sufficiently outrageous to support a claim for intentional infliction of emotional distress. Defendants' motion should be granted as to this claim.

**VI.**

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Dkt. # 54) is **granted**. A separate judgment is entered herewith.

**DATED** this 17th day of August, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT